CASEY, P. J., took no part in the decision of this case.

<br>

# CONRAD REINECKE
## V.
## THE PEOPLE, ETC.

1.   PENAL STATUTES, HOW CONSTRUED.—Penal statutes are to be con. strued strictly and are never to be extended by mere implication to either persons or things not brought within their clear meaning and intent.

2.   INTENTION, HOW ASCERTAINED.—Courts are not confined to the literal meaning of words in a statute in its construction, but the intention may be collected from the necessity or cause of the act and its words may be enlarged or restricted according to its true intent.

3.   MINING ACT CONSTRUED.—The court is of opinion that in the " Act to provide for the weighing coal at the mines " (Laws, 1883, § 113) sections two and three are an abridgment or explanation of section one, and that the legislature intended the act to apply only to mines where the weight of the coal mined was to be taken as the basis of compensation to the miners, and where an operator of a mine pays his men by the day, he is not obliged to purchase a " stock scale."

APPEAL from the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding.    Opinion filed October 10, 1884.

Messrs. WILDERMAN & HAMILL, for appellant; that penal statutes must be strictly construed and never extended by implication, cited Potter's Dwarris on Statutes, 245; Edwards v. Hill, 11 Ill. 22; Waddle v. Duncan, 63 Ill. 223; Raplee v. Morgan, 2 Scam. 561; People v. Peacock, 98 Ill. 172.

Statutes must be interpreted according to the intent and

meaning, and not always according to the letter: Potter's Dwarris on Statutes, 144, 175; People v. Canal Commissioners, 3 Scam. 153; Hamilton v. State, 102 Ill. 367; Zarresseller v. People, 17 Ill. 101; Stribling v. Prettyman, 57 Ill. 372; Castner v. Walrod, 83 Ill. 178; Perry County v. Jefferson County, 94 Ill. 220; People v. Hoffman, 97 Ill. 236; Holmes v. Carley, 31 New York, 290; People v. Utica Ins. Co., 15 Johns. 380, 381.

Mr. R. D. W. HOLDER, for appellee; that the operation of a coal mine is a business affected with a public interest and may be regulated by statute, cited Daniels v. Hilgard, 77 Ill. 642; Cooley's Const. Lim. 714; Dunne v. People, 94 Ill. 121.

CASEY, P. J.   Appellant was indicted in the Circuit Court of St. Clair county; there are eight counts in the indictment.

The material averments are that appellant was on the 2d day of July, 1883, the operator of a certain coal mine situate in that county and that there was a railroad switch and track adjacent to and connected with said mine. That appellant unlawfully failed, neglected to furnish, procure and place upon the said railroad track, adjacent to said mine, a track scale, of standard manufacture, upon which to weigh the coal hoisted from said mine.   The indictment charges a failure on the part of appellant to conform with the provisions of an act of the general assembly of this State, entitled "An act to provide for the weighing coal at the mines," approved June 14, 1883, in force July 1, 1884.   Laws of 1883, 113.   The cause was heard before the court and a jury, and the jury returned a verdict of guilty against appellant.   A motion for a new trial was made and refused by the court and appellant was fined $25.

Exceptions were taken to the ruling of the court and the case is brought into this court by an appeal.   Upon the trial of the cause the defendant was sworn as a witness in his own behalf, and in answer to a question, stated that he operated the mine in question for over two years, and for the last year had been mining the coal with machinery.   Objection was made

Reinecke v. The People.

to this testimony by the State's attorney, because it was immaterial. The objection was sustained and appellant excepted to the ruling of the court.

Appellant's counsel then " offered to prove by the witness that at the time the law went into effect, July 1, 1883, the defendant had no coal miners employed in his mine; that he was mining coal solely by machinery. That men were employed exclusively to operate the machinery, and that he paid the men operating said machinery in said mine since the first day of July, 1883, and for a year prior to that time, two dollars and fifty cents a day, and that their wages had no relation to the quantity or weight of the coal taken out of the mine. That there have been no persons employed in this mine since July 1, 1883, whose business it is to dig or mine coal, and whose wages can be or are fixed by the quantity or weight of coal taken out of said mine. That a pair of track scales would cost from eight hundred to one thousand dollars, and that they would be of no use whatever at this mine, as at present operated, as there are no coal miners, or coal miners whose business it is to mine coal, employed in said mine." Objection to this testimony was made by the State's attorney. The objection was sustained by the court, and the defendant excepted to the ruling of the court.

A proper decision of this question involves a construction of the intent and meaning of the act of the general assembly above referred to, which is substantially as follows:

The first section of that act provides " that the owner, agent or operator of each and every coal mine or colliery in this State shall furnish or cause to be furnished and placed upon the switch or railroad track adjacent to said coal mine or colliery, a ' track scale ' of standard manufacture, and shall weigh all coal hoisted from said mine or colliery, before or at the time of being loaded on cars, wagons or other vehicles of transportation," etc.

By section 2, " all coal produced in this State shall be weighed on the scales as above provided; and the weight so determined shall be considered the basis upon which the wages of persons mining coal shall be computed."

Section 3 provides, "it shall be lawful for the miners employed in any coal mine or colliery in this State to furnish a check weigher, at their own expense, whose duty it shall be to balance said scales and see that the coal is properly weighed, and keep a correct account of same, and for this purpose he shall have access at all times to the 'beam box' of said scales, while such weighing is being performed," etc.

The provisions of the act are made to apply only to coal mines doing business on and shipping coal by railroad or by water.

This enactment of the legislature has already received a construction by the Supreme Court, in the case of Jones v. The People, etc. In that case the miners were paid "forty cents a box for each box of coal mined or taken from said mine."

The case now under consideration is, in principle, similar to the one referred to. This is a penal statute, and it is a well recognized principle that penal statutes are to be construed strictly and are never to be extended by mere implication to either persons or things not brought within their terms, within their clear meaning and intent. Waddle et al. v. Duncan, etc., 63 Ill. 223; Edwards v. Hill, 11 Ill. 22; The People, ex rel., v. Peacock, 98 Ill. 172.

As to the construction of statutes in Potter's Dwarris on Statutes, page 144, it is said statutes must be interpreted according to the intent and meaning and not always according to the letter. A thing within the intention is within the statute though not within the letter, and a thing within the letter is not within the statute unless within the intention. In the case of The County of Perry v. The County of Jefferson, 94 Ill. 214, the letter of a statute was disregarded and the intent followed and allowed to prevail, to obviate an absurd result; and it was then expressly held, that it was sufficient authority to warrant a departure from the words of the statute, when to follow them would lead to absurd consequences. The People, ex rel., v. Hoffman, 97 Ill. 234; Perry v. Skinner, 2 M. & W. 471; The People, etc., v. Canal Com'rs, 3 Scam. 153; Holmes v. Curley, 31 N. Y. 290.

Reinecke v. The People.

Courts are not confined to the literal meaning of words in a statute in its construction, but the intention may be collected from the necessity or cause of the act, and its words may be enlarged or restricted according to its true intent.  Castner et al. v. Walrod, 83 Ill. 171.

In Walker v. The City of Springfield, 94 Ill. 364, it was held, that when it becomes necessary to reject one or two words in a statute and to substitute another, to give force to the meaning of the laws, it should be that which best effect-uates the legislative intention, and the courts should look to the object in view of the law makers.

Then what was the legislative intent in the enactment of the law of 1883 above referred to?  For what wrong or mis-chief was it intended or designed to create a remedy?  The first section of the act is very general.  If construed literally it is a sweeping provision that would require the " owner, agent or operator of each and every coal mine or colliery in this State " situated on a railroad, to furnish a " track scale " upon which all coal hoisted from said mine shall be weighed, before or at the time of being loaded in cars, etc.

The second section, we think, may fairly be construed as a limitation or an abridgment of the general provisions of the first section.  That it explains the reason of the enactment and the intent of the legislature.

It is, First, that the coal shall be weighed.

Second, the weight having been so determined, that weight shall be considered the basis upon which the wages of per-sons mining coal shall be computed and paid.

The general assembly evidently considered that some wrong had been or might be done to the persons who mine coal when the weight of the coal is taken as a basis of the payment for services rendered.

And as a remedy for that wrong either then existing or in anticipation, they provided for " track scales."

This intent on the part of the framers of the law, is, we think, still further shown by the third section of the act.

That section provides that the miners engaged in mining coal may select one of their own number as a " check weigher,"

a person engaged in mining in the same mine, who may be present when the coal is weighed, see that it is fairly and honestly done, keep a correct account of the weights, and at times have free access to the " beam box " of the scales "when such weighing is being performed."

This " check weigher," is to be paid by the miners, and it is made the duty of the operator to furnish him with a written permit, that shall entitle him to enter and remain in the room or place where the accounting by him of the weights of coal is to be done."

Regarding sections two and three as an abridgment or explanation of section one, we may fairly conclude that the legislature intended the act to apply only to mines where the weight of the coal mined was to be taken as the basis of compensation to the miners. Any other construction would seem to lead to "absurd consequences." We can not presume that the legislature intended that the "operator" of a coal mine should have expended a thousand dollars for a " track scale," when not a person about the mine was interested in the weight of the coal mined, unless it might be the operator himself, and it is fair to presume that the operator could take care of his own interest.

Neither can we presume that the legislature intended that those engaged in the mine, or the coal miners, should be required at their own expense, to employ one of their number to be present when the coal was weighed, keep an account, etc., when it was wholly immaterial to them whether one thousand pounds or ten thousand pounds of coal were taken from the mine or weighed. This view of the case would undoubtedly lead to " absurd consequences." We think, therefore, that it was error to sustain the objections to the testimony offered by the defense, and for that reason the judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.

The same question arises in the cases of Gartside v. The People, Knecht v. The People, Skillett v. The People, Daniels v. The People, Toch v. The People, as in the foregoing case, Reinecke v. The People, and the judg-

ment of the circuit court is reversed and the cause re-
manded in each of said causes.

Reversed and remanded.